CHRISTIAN, J.,
delivered the opinion of the court.
*This case is before us on appeal from a decree of the corporation court of the city of Norfolk. The case is a sequel to the suit of Fairfax against the City Council of Alexandria, reported in-38 Gratt. 16.
The facts disclosed by the record, so far as they are necessary to be noticed in this opinion, are as followsDr. Orlando Fair-fax was the owner, prior to the 4th day of May, 1864, of certain _ registered bonds, or certificates of stock, issued by the city- of Alexandria for the sum of $8,700.
On the 4th day of May, 1864, by a decree of the district court of the United States for the eastern district of Virginia, this stock or debt was confiscated and condemned, and a writ venditioni exponas was awarded by said court. At the sale made under that writ, the appellant became the purchaser of $3,000 of said stock, and on the 1st day of August, 1864. at his request, the United States marshal made a transfer of the same on the books of the appellee; and, thereupon, also at his request, two certificates of stock, of $1,000 each, were issued to the appellant.
By an act of the general assembly, approved February 14th, 1873, (see Acts of 1871-3, p. 73),the city of Alexandria was authorized to call in all the eviden -"s of indebtedness of said city in the form of stocks, bonds and certificates theretofore issued, and to issue in their place a like amount of registered coupon bonds, bearing six per cent. Ínteres!, payable semi-annually, the bonds payable thirty years after date, the coupons of which were declared to be receivable in payment of the city taxes and of any other indebtedness due to the said city.
When the certificates of stock, transferred to the appellant by order of the United States marshal under the proceedings of the confiscation sale in 1864, became due, he by letter and in person demanded their payment, *and threatened suit thereon unless payment was made.
He did not, however, institute his suit, but accepted from the city council of Alexandria, in lieu of said certificates of stock for $3,000, four coupon bonds for the sum of $500 each, issued under the aforesaid act, bearing date 1st of July, 1873, and payable thirty years after date.
At the time of the confiscation proceedings in the district court of the United States the certificates of stock owned by Orlando Fair-fax were in possession, and in February, 1874, all of them having previously fallen due, he commenced suit thereon against the city of Alexandria. The circuit court of said city gave a judgment against Fairfax and in favor of the said city. On a writ of error to that judgment this court reversed the same, and rendered a judgment against said city of Alexandria and in favor of said Fairfax for the sum of $8,700 with interest and cost.
The case was then carried by writ of error to the supreme court of the United States, where the decision of this court was affirmed.
It is further shown by the record that immediately after the rendition of the judgment of this court the city council of Alex *413 andria directed its officers not to transfer any bond held by the appellant, nor to pay, nor receive any of the interest coupons detached therefrom. And a few days after the decision of the supreme court of the United States affirming the judgment of this court, the city ^ council of Alexandria filed their bill praying that the bonds and coupons held by the appellant and which represented the stock purchased by him at the “confiscation sale of Fairfax’s property,” might be delivered up for cancellation; and that the interest on said stock and bonds paid by the appellee to the appellant might be decreed to be paid *back; and that the defendant might be restrained by injunction from selling, hypothecating, or otherwise disposing of the bonds Nos. 209. 210, 211 and 212, or the coupons annexed thereto, or detached therefrom, these being the coupon bonds issued to the appellant in lieu of the certificates of stock purchased by him at the confiscation sale.
This bill was presented to the judge of the corporation court of the city of Norfolk, who awarded an injunction in accordance with the prayer of the bill.
Upon the hearing, the injunction was perpetuated, and a decree was entered ordering the bonds and coupons in the hands of the appellant to be delivered up and can-celled, and directing that the appellant pay to the appellee the sum of $540, with interest from the date of the institution of the suit, and costs.
From this decree an appeal was allowed by one of the judges of this court.
The court is of opinion there is no error in the decree of the said corporation court.
First. Tt has been definitely declared and established both by this court and the supreme court of the United States, that the decree of confiscation, entered by the district court of the United States, against Orlando Fairfax, directing a sale of the certificates of stock issued to him by the city of Alexandria was a mere nullity and absolutely void.
This court based its judgment on two grounds: First, that the district court had no jurisdiction of the case, for the reason that there was no proper seizure of the stock; and second, that by reason of a rule of that court denying to “traitors” and “rebels” (so-called by said court) the right to appear and make defence in such cases, Orlando Fairfax was in effect not a party to the proceedings.
*The supreme court of the United States based its judgment solely upon the ground that there was no proper seizure of the stock, because the process was not served upon a proper officer of the corporation as required by the statute law of Virginia. But it was adjudged by both courts, that the confiscation sale was a. mere nullity, and that the purchaser acquired no title by his purchase at said sale.
There can be no doubt that the appellee issued and the appellant accepted the two certificates of $1,000 each under the erroneous belief that bv virtue of the decree of confiscation the debt due to Orlando Fairfax had been forfeited and his title thereto extinguished, and that the appellant, as pw-chaser, under, the writ of venditioni exponas issued under that decree had become the rightful owner of $2,000 thereof.
It is also equally free from doubt that the coupon bonds were given and accepted in exchange for those certificates under the same erroneous conviction. In point offset, the coupon bonds were issued for the or-igi-nal claim of the appellant. There was no new contract and no new consideration,
If the appellant acquired no title by his purchase, at the confiscation sale, to the certificates of stock sold at such sale, which has been declared by this court and the supreme court of the United States void, he could acquire no better title by accept ing without any new or further consideration the coupon bonds issued for the same indebtedness.
When the four coupon bonds of $600 each were issued to the appellant under the act of 1872. the appellee was funding its whole debt of nearly a million of dollars by issuing similar bonds to all its creditors. At that time there was no controversy between the app@h lant and appellee as to the title to the paid certificates of stock, and there had been no adjudication of *the validity of the confiscation sale. But on the contrary the corporation found on its books this stock transferred by order of the United States marshal to the appellant at his request-, and they issued to him as the apparent owner OH their books, the four coupon bonds in the place of the two certificates of stock. The corporation did not know and could not know at that time that the confiscation sale was void. It was only years afterwards when Orlando Fairfax brought his suit, that they had any notice that the validity of that sale would be contested. All that the corporation knew or could know at that time, was the fact that a court of competent jurisdiction had decreed a sale of the certificates of stock due to Fairfax, and that at that sale the appellant had become the purchaser, and that at his request the. marshal making the sale, had had the stock to the amount of $2,000 transferred to the appellant. It was not for the corporation to question the validity of that sale. Its duty was to direct the payment of said stock to the real owner, and according to the decree of the district court of the United States the appellant was the owner. To him they issued the four coupon bonds in place of the stock purchased by him. It is plain that the issuance of said bonds created no new liability, They represented the same debt and for them there was no new consideration. It is clear, therefore, that if the appellant had no title to the stock he had none to the coupon bonds issued in its place.
The claim of the appellant is based upon two grounds: First, that the appellee is not entitled to relief in a court of equity, because it is estopped by its conduct from denying the defendant’s title to the coupon bonds and the coupons due thereon; and second, because if the said certificates of stock were *414 transferred and the said coupon bonds issued in their place were so transferred and issued by mistake as to the rights of the *parties, that mistake is one of law; and in equity as well as at law the maxim “Ignorantia juris neminem ex-cusa!” must prevail. We will briefly notice both of these objections.
First. Is the corporation estopped from asserting its right to have the bonds issued to the appellant cancelled, by its conduct in issuing and delivering to him these coupon bonds in the place of the certificates of stock transferred on their books (by order of the United States marshal) as purchaser of the same at the confiscation sale?
The rule upon the subject of estoppel by conduct, or, as it is sometimes called, the equitable estoppel, is thus laid down by Lord Denman, C. J., in Pickard v. Sears, 6 Adolph and Ell. 469: “The rule of law is clear that where one by his words or conduct wilfully causes another to believe the existence ot a certain state of things, and induces him to act on that belief so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time.” Such an estoppel, therefore, only arises when the conduct of the party estopped is fraudulent in its purpose or unjust in its result, and can only be called into life for the prevention of fraud or the redress of injury. 2 Smith’s Lead. C. 642-43-47, 5 Amer. Ed.
Now in this case the appellee was not a party to the confiscation proceedings, and did nothing to induce the defendant to become a purchaser under them.
The appellee did not by words or conduct wilfully cause the appellant to believe that the decree of confiscation was valid, or induce him to act on that belief so as to alter his previous condition, nor was the conduct of the corporation in any respect fraudulent in its purpose or unjust to the appellant in its results. On the contrary the appellee no to the confiscation *proceedings had nothing to do with the purchase made by the appellant under the sale directed therein. It was the duty of the appellant (and in nowise that of the appellee), to make' enquiry as to the validity of that sale. He took all the chances of a purchaser under a judicial sale. If the decree of sale was void (as has been declared both by this court and the supreme court of the United States), he acquired no title under such sale. The rule caveat emptor applies to him. It was his duty, and not that of the appellee, to have en-quired into the validity of the decree of confiscation. If he neglected this duty and in consequence he parted with his money for nought, he cannot justly impute his own negligence to the appellee.
Certainly there is no ground of estoppel to be asserted in this case.
AH that the appellee did was to issue to the .appellant coupons bonds in the place of stock which appeared upon their books to have been transferred to the appellant under a decree of a court of competent jurisdiction. Such an act on the part of the corporation. it is plain, did not estop it from asserting its claim to have the coupon bonds cancelled and delivered up upon the ground that the appellant had no title to the same, after that question had been decided, both by this court and the Supreme court of the United States. '
The court is therefore of opinion that the claim of the appellee to have the coupon bonds issued to the appellant delivered up and cancelled is not defeated upon the ground of estoppel.
The court is further of opinion that the rule, invoked by the appellant, ignorantia juris non excusat, does not apply in this case.
'While it is a general rule that mistake in matter of law cannot be admitted as ground of relief, it is not a *rule of universal application, especially in courts of equity. It is not an absolute and inflexible rule, but has its exceptions, though such exceptions, in the language of Judge Story, are few, and generally stand upon some very urgent pressure of circumstances. If the maxim is used in the sense of denoting general law, the ordinary law of the country, no exception can be admitted to its general application; but it is otherwise when the word jus is used in the sense of denoting a private right. _ If a man through misapprehension or mistake of the law parts with or gives up a private right of property, or assumes obligations upon grounds upon which he would not have acted but for such misapprehension. a court of equity may grant relief if under the general circumstances of the 'case it is satisfied that the party benefited by the mistake cannot in conscience retain the benefit .or advantage s-o acquired.
It has also been held in numerous cases that where the law is confessedly doubtful and about which ignorance may well be supposed to exist, a person acting under a misapprehension of the law will not forfeit any of his legal rights by reason of such mistake. [See Kerr on Fraud and Mistake, 398-401, and cases there cited.]
Exceptions to the general rule that mistake of law furnishes no ground of relief are fully recognized by this court in the cases of Zollman v. Moore, 21 Gratt. 313; and Brown v. Rice’s adm’r, 26 Gratt. 467.
Now it is to be remarked that the appellant’s claim was based upon his purchase at a confiscation sale made under an act of Congress which was in itself a war measure, and not an ordinary general law, but was an extraordinary enactment for a specific purpose and amid exigencies arising out of civil war.
This act of Congress, at the time of the transfer of stock above mentioned and the substitution of the *coupon bonds in their place, had not been construed by courts nor the mode of its operation and execution determined.
It would be vain to say, in such a case, that the City Council of Alexandria knew, or ought to have known, how such a law, new *415 and extraordinary in its nature, would be construed by the courts, and whether seizure and confiscation under it would be declared regular and valid, or irregular and invalid, according to the mode in which the process was executed, or other proceedings had thereunder.
But was the mistake here a mere mistake of law? It is true the district court of the United States had jurisdiction under the con,fiscation act, of this no one can be presumed to be ignorant. But in the case of confiscation of Fairfax’s stock the jurisdiction of the court did not attach because the stock was not properly seized by the marshal.
The mode of seizure was prescribed by the attorney-general to the district attorney; and whilst these instructions had the force of law, they could not be regarded as constituting a part of the general law of which every man is presumed to be cognizant. And so, also, it may be said that the rule adopted by the district court of the United States, denying to rebels and traitors the right to appear and make defence in confiscation suits, so far from being a part of the general law, was against law and void. So that the two grounds upon which this court and the Supreme court of the United States based their decisions in declaring the confiscation sale to be void were founded upon questions of fact as wel} as questions of law.
It cannot, therefore, be said that the ap-pellee is seeking relief upon the ground of mistake in law. But apart from all this the peculiar circumstances of this *case taken in connection with the proceedings in the confiscation case above referred to this court and of the supreme court of the United States in reference to the same, it is a case strongly appealing to a court of equity for relief.
The rule laid down by Mr. Kerr and for which he cites numerous authorities that “If a man through misapprehension or mistake of law, parts with or gives up a private right of property, or assumes obligations upon grounds upon which he would not have acted but for such misapprehension, a court of equity may grant relief, if, under the general circumstances of the case, it is satisfied that the party benefited by the mistake cannot in conscience retain the benefit or advantage so acquired,” has peculiar application to this case.
Under the decision of this .court affirmed by the supreme court of the United States, the City Council of Alexandria is compelled to pay over to Orlando Fairfax the sum of $8,700, the stock issued to him. and if the claim of the appellant be allowed, the appel-lee must pay him also the sum of $2,000 of the same stock which he acquired by purchase at a sale declared to be utterly void. And it als-o appears bv this record that for this stock thus purchased he paid only the sum of $400, upon which he has received in the shape of interest the sum of $1,699.60. To hold the city of Alexandria responsible under such circumstances would be grossly inequitable and unjust.
We think it is plain upon the whole case, that the appellee is entitled in equity to the relief prayed for. And of this the appellant lias no just cause for complaint, but on the contrary is most fortunate, for though a pur-at a sale declared to be void he has realized *a large sum in interest and dividends which amply reimburse him for the outlay of money which he made. The court is therefore of opinion that there is no error in the decree of the corporation court of the city of Norfolk, and that the same must be affirmed,
Decree affirmed.